May it please the Court, I'm David Neal from North Carolina on behalf of Stanley Ballenger. Now when Mr. Ballenger pleaded guilty, he lost any way to challenge the constitutionality of the stop and seizure that preceded his arrest in relation to his criminal conviction. The issues could not have been litigated on direct appeals or state post conviction or federal papers. No, not in South Carolina, Your Honor. South Carolina courts, as I read the law, do not allow conditional guilty pleas as was cited in the brief. So in the rare instance where a criminal defendant acknowledges his guilt of the offense but wants to vindicate his constitutional right to be free of unreasonable search and seizure, heck is not a bar to his 1983 claims. And again, this is really going to be a rare instance where a criminal defendant, instead of litigating the suppression issue and going to trial, chooses instead to pursue 1983. And I think that's one reason why there are so few cases dealing with this intersection between Herring v. Crosses and the heck bar. So few cases. Have you gone in? Yes, Your Honor. Appellate cases? Well, first of all, I was going to say, Your Honor, in this court's unpublished opinion in Irby, it was cited as part of the justification for why the heck bar wouldn't apply. It cites Crosses v. Herring and holds that a judgment based on a guilty plea does not have preclusive effect in a 1983 action alleging a Fourth Amendment violation. So that was part of the justification in Irby for allowing the 1983 claim challenging a Fourth Amendment problem to go forward and to not be barred by heck v. Humphrey. It just seems very weird. They were decided, what, nine years apart? And heck doesn't make any reference at all to the earlier case. In judgment, I don't think that's surprising, because that wasn't the issue before the Supreme Court in heck. And so it's not unusual for not all possible permutations of law to come up. But you do have that footnote in heck that would seem to be a place where you could have cited the earlier case. And I'd hate to speculate why the Supreme Court in that instance didn't reference the Herring case in particular. But I think it's because that wasn't a guilty plea case. It would have been dicta in any event. I think what's more interesting is some of the cases that have, for example, that I cited in the brief, the Ninth Circuit case, Ove v. Gwynne, for example. The rationale, again, this was just a heck decision, just deciding. But before we even get to that, don't we have a threshold issue simply dealing with the statute of limitations? I mean, my problem is a practical one, that the applicable limitations period under South Carolina law would be three years. And not only is the 1983 complaint outside the statute of limitations, it was brought 10 years after the search. I can't remember what happened 10 years ago. I mean, it's the kind of thing that gives litigation a bad name. I've seen equitable tolling cases where we were talking about one year, maybe, or a few months, or a few days, or whatever. But I haven't seen anything where you want to treble, more than treble, the statute of limitations is three years. I mean, how in the world, given the frailties of human memory, I don't even know whether people are alive, or what's happened to their memories in the meantime, I mean, the statute of limitations don't just exist to provide repose or finality. They exist because of the faculties of human memory. I mean, the law can't do its job this long after the fact. We can't create the event with any degree of accuracy, or if so, it's a compromise accuracy. Judge Wilkinson, this is a very unusual case where the only reason why this case is filed outside of the statute of limitations is because the district court, the first time around, and this court said, heck, you have to wait until you have finished your post-conviction review. And they dismissed his prior complaint without prejudice. And unfortunately, though, there was a mistake. There was a manifest error in the procedural history of the case several years ago in what I'll call Ballinger 1, in which this court said he pleaded not guilty, and the evidence was used against him in trial. And in that case, there would have been a heck of a problem. In Ballinger 1, I mean, equitable tolling is supposed to be an extraordinary form of relief. And we keep saying extraordinary circumstances. Did you even raise the question of whether heck applies to a guilty plea in Ballinger 1? Your Honor, I was not counsel in Ballinger 1. Well, that's part of the problem. I'm saying that everything was so far, you know, I mean, it was so long ago. But my understanding is that that issue wasn't raised in Ballinger 1. Well, couldn't it have been? And Your Honor, if counsel, again, he was a pro se litigant when he was in the district court the first time around. But you raised the Fourth Amendment point. So couldn't you have raised the heck point? Again, Your Honor, when he got to the Fourth Circuit, I believe this court appointed law student counsel from a clinic who, as I understand it, did not raise this issue then. Could he have? Could you ask us the equitable tolling 10 years after the fact when you didn't even raise the claim? Well, your argument, I guess, is that, OK, the time up to the Fourth Circuit, that has to count against him for statute of limitation purposes. But when the Fourth Circuit said, you have to wait until you're no longer in custody under heck, then the period from then forward until he is released should be tolled for limitation purposes. Yes, Your Honor. OK. But let me ask you. Still, don't you have an even more fundamental problem? Because the argument that you're raising now with respect to Herring, you didn't raise in the court below in this very case. Mr. Ballinger is a pro se litigant. He, as best I can tell, and again, it's difficult to know for sure, but my understanding is he was alleging to the district court that heck should not be a bar to his claim. He did not raise the Herring. Right. And again, when this court took. I didn't even understand that the objection to the magistrate's report raised the guilty plea argument. Judge Wilkerson, he raised the issue that heck should not be a bar to his claim. So he made it at that level of specificity. So he did not. You're right. Acknowledging that they didn't talk about the guilty plea. Special hecked. Yes. So what he did, though, he did make a specific allegation that his case falled under this court's holding in the Wilson case. And in when this case, when this court held that a person who is not in custody and did not have a viable means to pursue his case in habeas corpus would not be barred by heck. And he's really in the same situation. What we have to do is to expand our dicta about giving the benefit of the doubt to pro se litigants to say that he has actually, even though he didn't, that he has raised, he's preserved his Herring claim below. Yes, Your Honor, that's what I've asked. And if you don't do that, then you're out of luck. Your Honor, that is what I've asked to do. And I think it's appropriate, given the same rationale that Estelle and the cases following it have given for liberally construing pro se complaints. I think it has to apply for pro se objections. The next issue that strikes me as a really, it's almost a law school problem or a moot court problem or something. I'm not as confident as you are how that is all going to work out when the Supreme Court ultimately decides how those cases are read together. So that would counsel for getting a case in which the issue is squarely presented and we don't sort of reach out to decide. Judge Watts, I understand the point. I think that given, again, fundamental principles of equitable tolling where the only reason he's out of time is that this court and the district court said, you can't come in now, go away. But if we give you that benefit of the doubt, then we still have to go a step further, as we've just discussed, to say that you've actually raised this argument below. When you would concede to me that you haven't raised it below, but you think we should liberally construe the complaint and say, or construe the pleading and say that it's contained within there. Yes, Your Honor. And I think that that's, again, I don't think it's a stretch. I think that's exactly what the case law dictates. I mean, I agree with, I think that heck guilty plea thing is, it's tricky, it's important, but it's tricky. I don't understand the need for ever getting near something like that in a case like this. And not only should these claims have been raised and everything, but this seemed to me to be different from Wilson, because this plaintiff actually filed for habeas and was rejected. And Wilson said, no, the 1983 plaintiff was released from custody before he could ever file for habeas. And so if we're talking about an equitable remedy, first of all, I don't understand what's about dragging people into court 10 years after the fact on claims that weren't raised. And I don't understand, the whole equitable core of Wilson was that the person was out of custody before he could ever reach a federal court and file in habeas. And in this case, there's been a filing in habeas, and it's been rejected. And even if we gave you the benefit of all of these different periods of equitable tolling, you have conceded that there would be a 29-month lapse of time. Now, you think that's less than the 36 months, but there's also a limitations period after the state post-conviction proceedings had concluded and before the federal habeas proceedings commenced. Now, it may well be that the state post-conviction time should be told and everything, but I'm and the onset of federal habeas proceedings. And that's time that AEDPA counts. AEDPA tolls the time in state post-conviction proceedings. But it sure as heck doesn't toll the time for limitations period purposes between state post-conviction proceedings and the onset of federal habeas. And that gives you another 16 months in addition to the 29 months that you've conceded counts for limitation purposes. So even if we were to take the extraordinary step of tolling something three times the normal statute of limitations period on claims that were not raised, this still puts you over, even with tolling. It still puts you over. In Judge Wilkinson, there was some dispute in the record about whether or not Mr. Ballinger had attempted to appeal the state post-conviction proceeding. And as I recall the record, there was a previous effort to file a federal habeas that was where he was said, well, you have to exhaust state remedies. So as I read the record, that there wasn't an additional period that he counted against him. I read the record here. The state post-conviction proceedings terminated on October 13, 2005. And the federal habeas proceedings were not initiated until February the 20th, 2007. That's 16 months. And we can toll everything you want to toll. But, and that's questionable in and of itself. But when you add the 16 months to the 29 months, that still puts you over. A lot of time. If I could, Judge Wilkinson, I think the other interpretation that I put forward in the reply brief is that in his original 1983 action, Ballinger was told, complete all of your post-conviction remedies. So I'm saying that that's one unit of time, that his state habeas and his federal, his state post-conviction and his federal habeas is sort of one period that I was counting as where his proceedings should be considered tolled for purposes of coming back. So that was my argument. Before you sit down, can you tell me whether you think that the heck bar can never apply to a conviction by a guilty plea? No, Your Honor, Judge Motz. I think actually the cases cited by defendants are illustrative of this point. And I think they actually help Ballinger's case. Those are all examples where criminal defendants have pleaded guilty to offenses like obstruction of justice or disorderly conduct in which the actual constitutional wrong that they've identified in their 1983 claims is indistinguishable from the offense to which they pled guilty. So in those cases, you would still have a heck bar. What if he said on the record that he was convinced the evidence that was the fruit of the allegedly illegal search was, he was convinced by that and only by that evidence? Your Honor, I'm not sure that a, some sort of oral concession in the midst of a guilty plea hearing would rise to the level of a judicial finding that would be given collateral estoppel effect. I mean, because that's really the issue in Herring versus Processes. How can you, you have to look to whether or not the issue below had been decided in a way that would have collateral estoppel effect. You have to admit there's a significant question that revolves around the fact that pleading guilty is not a favorable termination. And that part of what Hecht wants to do is to preserve habeas as a primary remedy, I'm sure. But another part of it is it's a decision with various dimensions. And another part of it is that in order to bring a suit for damages, you should be able as a threshold matter to prove to society that you weren't guilty in the first place. And particularly after a guilty plea, which is a voluntary admission of guilt, if nobody forced you to make it, that it shouldn't, the 1983 action should not be available. Now, what I'm saying is I think it's a very, very close, very, very difficult question. To be honest, they're the arguments you made, but they're the counterarguments that can easily be made. But I come back to the fact that I can't imagine getting into it on a record like this. We get into it, we get into it okay. But this has so many problems with objections, with raising arguments early, with objections, failure to object to magistrate's reports, to how we are going to treat the tweener period between the conclusion of state habeas and the onset of federal habeas. All of those, just the preliminary hurdles are unbelievable. And judge Wilkerson, I know I'm out of time. It's not your fault. Not only were you not counseled, not only were you not counseled, but you're appointed and you've got to do the best job you can for your client. You've done a fine job. None of it is your fault. I'm just making a general jurisprudential point that, oh boy, how many hurdles we have to clear. And I know I'm out of time. If I could respond, I think the interesting policy point that you raised is a good one. But the flip side is, it's the suppression issue for, in a criminal case, puts so much pressure on our courts to say, this guilty person could go free because of a constitutional violation. This really would provide a better avenue. People concede their guilt. They are punished. And then they have a 1983 action to vindicate their important constitutional rights that are separate and independent from a finding of guilt of possession of firearm or drugs. And I understand that. But I'm just saying, there are a lot of counterarguments to it. Well, again, I know my time is up. And hopefully, we'll have some time for rebuttal. Yeah, you do. Thank you. Thank you. Thank you, Your Honor. May it please the court, my name's Andrew Lindeman. I'm here on behalf of the appellees Owen, Stevens, and Lavery. And let me say just from the beginning, I believe that there's no claim remaining against Nicholas Lavery, who was the prosecutor of the criminal action against Mr. Ballinger. Obviously, as this court has already addressed, there are a number of preliminary issues, threshold issues that we believe bars this claim should result in the affirmance down below. One, of course, is the statute of limitations that's been discussed at length this morning. Clearly, where the events that took place, the traffic stop itself was in October of 2000. So we're looking at more than 12 years ago at this particular point. And this is not a case where Mr. Ballinger didn't have the opportunity to bring his lawsuit. He brought his lawsuit in 2002. And this is, of course, the second time I'm before this court under similar circumstances where the case was dismissed under 1915. Ultimately, this court then took the appeal from the pro se litigant and appointed counsel. And there was appointed counsel also in the appeal in 2003. And a published opinion saying, come back again when you are no longer in prison. Well, it's a published opinion that says, under heck, you're required to show as an element of your cause of action that your conviction has been overturned either through state PCR, federal habeas corpus, or some other mechanism. And until you actually show that, you don't have a cause of action. And dismissing without prejudice. That's right. Let me ask you, it's not your position, is it, that a guilty plea never precludes application of heck? No, it's not my position. Just like footnote 7 in heck leaves open that there are certain factual scenarios that could give rise. Action between these two Supreme Court cases, too. Well, I found it very interesting that herring was never mentioned in heck. And I know Judge Motz, you picked up on that as well. Right. But the cases that you cite that reject herring don't suggest that you could never have the herring argument that your colleague on the other side presents. They just say you don't have it in this case. That's true. And really, there are no- That's your position, too. You don't have it in this case. Really, there's- If we ever did get to the interaction between the two, you say it isn't here. In all candor, there's really an absence of case law that really looks at the relationship between those two cases. And I would submit that this is not such a case for a number of reasons. First of all, the main focus of the Supreme Court in heck was this rejection of collateral attacks of criminal judgments. Didn't distinguish between criminal judgments by trial verdict versus guilty plea. Just that there shouldn't be collateral attacks of criminal judgments through civil lawsuits. That's the basic premise that the Supreme Court raised in heck. And as a result, they said, and the rule in heck is, if a civil action- If a plaintiff were to prevail on his civil action, in this case a Fourth Amendment claim, would that at least imply or impugn the conviction? That is the issue that this court took up, issued a published decision in 2003. I think the analysis is solid. I don't think the arguments that are being made by Mr. Ballinger this time around through his new counsel at all affect the ultimate decision that this court made in Ballinger 1. The issue that has been raised in this particular case on appeal is simply that a guilty plea makes a difference. Now, as the court has already touched on, there are preservation issues on that point because that is not the issue that Mr. Ballinger raised down below when either in his pleadings or when he objected to the report and recommendation. And therefore, that issue should be waived if this court applies Thomas v. Arnn and that series of case law. But even if this court were to reach and found that this was an appropriate case to address whether a guilty plea still gives rise to a heck bar, I would submit to this court that it does. And the reason for that, I think, is best analyzed by looking back at 2003 and let's assume that the panel in Ballinger 1 allowed that Fourth Amendment case to go forward. And if that Fourth Amendment case had gone forward, let's further assume that there was an unconstitutional traffic stop. I'm certainly not conceding that on my client's part, but let's assume that. And as a result of that, the cocaine that was found as the search following that traffic stop was a fruit of an illegal stop. Now, at that particular point, the plaintiff, Mr. Ballinger, had already pled guilty to the criminal offense. So the question is, would the success that he would have had, and based on my assumptions, on that Fourth Amendment claim, could that have resulted in the reversal, overturning of that criminal conviction? That's the analysis that would need to be applied even to a guilty plea. And in this particular case, I think the answer is clearly yes. And the reason for that is the plaintiff can pursue, first of all, state post-conviction relief remedies. One of the remedies that he can seek, and he attempted to pursue this, and simply lost before the state circuit court judge, is the argument that failure of his trial counsel to pursue that motion to suppress resulted in inadequate or insufficient representation. He pursued that issue, and he obviously could have pursued that issue. And I would submit to this court that if, in the interim, there was a 1983 verdict that agreed with his position and found a Fourth Amendment violation, that would then result in post-conviction relief being granted, and therefore, his guilty plea would have been overturned. I would pick the absolutely most difficult argument you could possibly make to sustain your position. I'm happy to hear it. Well, and again, I... That is so, that is so, if, if, if, if... Well, it is. It is, and unfortunately, that's... Mr. Linderman, please. We have an obligation, if a case goes up in the intersection between Herring and Heck, and the degree to which, and the instances in which Heck applies to guilty pleas. When we, if we want a case to be heard by the Supreme Court, and to have a, a, uh, uh, the, the court resolve it, there's, I think, a bit of an obligation on the part of the Court of Appeals to send the Supreme Court a clean case. Um, they don't, if, if something is muddy, that means they have to fight, they have to fight through all those preliminary issues. They might, even if they ever granted it, it would be dismissed as improvidently granted. Um, but I've always thought that if you're going to tee up a case, um, on an underlying issue such as this, it ought to be a clean case. Well, this is the least clean case I've, I've ever seen. And the threshold issues are so formidable, I can't even imagine what the Supreme Court would say. How much underbrush did you have to fight through, Court of Appeals, to, to reach this question? It would seem like such an overreach. And so, I don't understand why you just leapt on that, of a highly speculative argument that was just laden with what-ifs, when, when the, when the threshold issues are so formidable. Well, and I'm certainly not suggesting that you go any, anywhere beyond those threshold issues. I mean, I've already touched on them. Um, in fact, I'm not frankly all that sure about how I feel about the fact. Well, I mean, clearly there's a statute of limitations prob, problem. Clearly there's a issue where this, uh, this Hecht versus Herring argument was never asserted in the lower court, was never decided by the lower court. There's no question about that. And I agree with Your Honor. I believe that there are numerous threshold issues, and this is not a clean case to have a novel issue such as that decided either by this case, by, by this court or by the Supreme Court. I simply wanted to not leave the actual issue that was asserted on appeal left unargued. I'm not, we understand that you're not conceding the issue, sir. That's correct. And, and quite honestly, uh, Mr. Neal, representing his client through appointment, raised that issue, and it was in many ways beyond the question that this court even asked him to address, which was simply whether or not the fact that, uh, Mr. Ballinger is now out of prison and is claiming that that somehow affects his, uh, ability to pursue post-conviction, uh, relief, uh, a la this court's decision in Wilson, uh, whether or not that is a legitimate claim. And we haven't even talked about that, and clearly it is not. I mean, first of all, the Supreme Court in Hecht said very clearly that they were not setting, setting forth an exhaustion rule. And number two, as Judge Wilkerson, I believe you already touched on earlier, this case is significantly different than Wilson, uh, versus Johnson, because in that particular case, before, before the plaintiff had any opportunity to pursue post-conviction relief, uh, he was out of jail. Um, in this particular case, Mr. Ballinger was in prison for a number of years, and as the record clearly shows, he was able to pursue his state post-conviction relief remedies, and as well as his federal remedies. Is there anything further? There's nothing further, and we would, we... No. Thank you, Your Honor. Do you have anything to say to us about the issue that's just touched on? Yes, Your Honor. Yes, Judge Motz. I, um, I'd started to in, in the, in the, before to talk about Wilson, and I think it is, and I think that actually they're interrelated. Um, the, the issue, one of the fundamental issues in Wilson was making sure that the unique remedy of 1983 is not taken away from a, from a plaintiff who has a potentially viable constitutional claim. And now the reason that the particular plaintiff in Wilson couldn't access habeas corpus had to do with the amount of time involved, as I understand it. But here, the issue is, is, is similar in the sense that, um, there is no avenue for challenging the constitutionality of an illegal search and seizure under the Fourth Amendment. I don't see necessarily how you get into the one without the other. I mean, I, I see the, the Wilson and, and the Heck claims as simply two sides of the same coin. Judge Wilkerson, I agree, and I think that, that the... So if we went into Wilson, we'd have to go into Heck. Um, yes, but I think that, that Ballinger would prevail under that analysis as well, because there is no viable, there's no way to get into federal court on a Fourth Amendment claim. Yeah, but I... And so that door is closed to him. So for the same reason that... The same procedural problems exist with respect to that claim, whether it was raised below, whether, it was raised below, but whether... Judge Motz, this, yeah, this issue was definitely raised below. So there's a... I guess I don't understand how we would get to the Herring point. This is how, Judge Motz, because... Just if we say that Herring was never raised below. Um, because, let's put on one side and say, let's, let's say that there was equitable tolling, and that he had raised an objection under Wilson versus Johnson. Right. Then the issue is... Putting that to one side, the reason why... Oh, Judge Motz, I think I can, because there's an interrelation between the Wilson and the Herring. Because the fundamental issue in Wilson is to vindicate 1983 as a cause of action. If it's only those rights under 1983 that you made, and if you didn't make the Herring argument to the district court or to the magistrate judge, then Wilson doesn't provide... But, Judge Motz, he made the Fourth Amendment claim. That's the issue, is the Fourth Amendment claim, and the... Again, as I'm saying, we have to expand it to include Herring to get Wilson to help you. Um, well, the argument I was trying to make is that if you look at Wilson and say that the fundamental issue is vindicating, allowing a plaintiff to get into court if there are roadblocks to pursuing habeas for the claim that you're concerned with. So my position is that Ballinger had absolutely no way to pursue a habeas claim for his Fourth Amendment violation. And so that's why he's in a similar posture as Wilson. And so that sort of opens the door to the broader issue of what other barriers apply. And I'm just saying that then once you've made that argument... Well, you had a right to pursue it in state court, I guess. And under Stone v. Powell, it was a question of whether the... was full and fair consideration of the claim in the state courts and everything. Stone v. Powell's not an absolute bar. And, of course, you can always pursue it through an ineffective assistance of counsel claim and bring the Fourth Amendment claim in through that. So, you know, to say that you had no access to federal court notwithstanding the ineffective assistance of counsel claim and notwithstanding the fact that Stone v. Powell leaves an escape hatch there, about whether there was a full and fair consideration, it was just not clear to me that there was no opportunity to pursue it collateral. Well, Judge Wilkinson, as I understand South Carolina law, once he pled guilty, he couldn't bring a stand-alone Fourth Amendment claim to state post-conviction. His only real claim is that he have a voluntary... In federal courts, the question of whether it was ineffective assistance of counsel or whether there was a full and fair opportunity in state court to litigate the Fourth Amendment claim, you could say, well, South Carolina doesn't allow conditional pleas and this should have been litigated and here's why it was compelling and not to do so was ineffective assistance of counsel. And under Stone v. Powell, there was no state court hearing. There was a full and fair hearing. So, you know... Well, Judge Wilkinson, the issue is that as a Sixth Amendment issue is separate and under Kemmerlin, there's a different standard. So that's why I'm saying that he couldn't get a clean review of just the Fourth Amendment search and seizure issue. He could potentially litigate the Sixth Amendment issue, but as Kemmerlin sets forth, those are different standards of relief. And you could lose your ineffective assistance of counsel claim even if there was a viable Fourth Amendment violation. You know, if we get into this, it's going to be another five years before it's litigated. Then we'll have extended... Sorting out all those issues, how many years is that going to add to the federal state, to the period since the search took place? We'll be at 12 or 13 and counting. Judge Wilkinson, if the case was remanded in short order to address the merits, it would be a lot less than that. Thank you. All right. I see, Mr. Neal, that you're court-assigned, and I do want to thank you for your argument. We do depend on the capable representation of counsel such as yourself to make the adversary process work, and I just want to thank you. Shake hands.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Stephanie D. Thacker